# BELKNAP,

---

## RUSSELL *v.* DYER.

A fraudulent conveyance is void against a preëxisting creditor of the grantor, and such creditor having levied his execution upon the premises, fraudulently conveyed, is entitled to show the fraudulent character of the conveyance whenever it may be material for him to do so, to defend his title under the levy against the claims of the grantee.

The rights and liabilities of the parties, in the proceedings whereby the land of a debtor is taken to satisfy the debt of a creditor, depend entirely upon statute law.

By the levy of an execution upon land, the judgment creditor acquires the absolute ownership of the premises levied upon, defeasible upon the performance of a condition subsequent, and he receives the rents and profits of such premises, during his occupation of them under the levy, as incident to such ownership, to his sole and exclusive use and enjoyment, in the absence of any statute provision to the contrary.

A judgment creditor, who has levied his execution on land of his debtor, is not liable, in any form of action, to account for the rents and profits of the premises, which he may have received during his occupation thereof, prior to a redemption by the debtor or his assignee.

ASSUMPSIT for $2,000 money had and received, and upon an account annexed to the writ, for $1,450. The writ is dated February 23, 1856, and the action is brought to recover $1,000, alleged to have been received by the defendant of Horace Fabyan, September 4, 1849, for rent of the Mount Washington House and farm in Carroll, in the county of Coös. The plaintiff also claims to recover interest on said sum.

Russell *v.* Dyer.

For the purposes of this case the parties agree upon the following state of facts :

On the 28th day of January, 1847, the plaintiff leased to the said Fabyan the Mount Washington house and farm, together with the road leading on to said mountain, for five years from the 20th day of March, 1847, the rent to be paid yearly on the first day of September, in each year, the first two years to be $800 a year, and the remaining three years $1,000 a year. In the lease from the plaintiff to Fabyan, Fabyan covenanted to keep the premises in repair. Fabyan thereupon entered and occupied the premises.

The title of the plaintiff was a deed of warranty, dated August 21, 1844, from Daniel Burnham to the plaintiff, and it is admitted that the title was once in the said Burnham.

On the 10th day of May, 1843, the defendant commenced a suit in Carroll county against the said Daniel Burnham and one David Webster, and on the 16th of the same May attached the aforesaid property as the property of the said Burnham, and at the May term, 1848, of the Carroll County Court of Common Pleas, judgment was rendered in said suit against the said Burnham for damages $4,763.32, and costs $114.84, said judgment being rendered May 19, 1848. Execution issued thereon, and was committed to Benjamin H. Chadbourne, a deputy sheriff, May 22, 1848, by whom it was extended upon the land leased (being the property attached) on the 12th of June, 1848, and a part of the land, including the house, set off in full satisfaction of said execution. A copy of the execution and officer's return may be read on the hearing of this case. Seizin was delivered and accepted on the same day. Another suit was brought by the defendant against the said Burnham and Webster, on the 20th of October, 1846, upon a debt existing prior to the deed from Burnham to the plaintiff, in which judgment was rendered at the May term, 1848, against the said Burnham, for damages $4,791.36, and costs $20.58, on which execution issued May 22, 1848, and was extended by the same officer on the residue of said demised property, and the same set off June 12, 1848, in part satisfaction

of said execution.   Seizin was delivered and accepted on the same day.

The said Burnham's right to redeem said lands so set off was seized by said officer upon said last mentioned execution, on the 20th of the same June, and sold at auction on the 31st of July, 1848, to the defendant Dyer, and a deed thereof given by the officer to the said Dyer.   A copy of said last mentioned extent and return of said deed from the officer to Dyer may be read at the hearing.

After completing said extents, on the 12th of June, 1848, the defendant entered into possession of the lands so set off, and threatened to expel the said Fabyan, and compelled him to attorn and he did attorn to the defendant, and afterwards held under him.   On the 3d of November, 1849, the plaintiff tendered to the defendant, at his house in Baldwin, Maine, and left with him the amount of the first mentioned judgment, with interest, costs and damages, which the defendant declined to receive.   On this point either party may read the deposition of F. R. Chase, taken by the plaintiff to be used in this case.

The said Fabyan continued to occupy the premises under the defendant, claiming them by virtue of said extents and sale, and on the 4th of September, 1849, he paid to the defendant $1,000 for rent of the demised premises, which, according to the plaintiff's lease to Fabyan, became due September 1, 1849.

The defendant offers to prove that the aforesaid conveyance from Burnham to the plaintiff was fraudulent and void as to the creditors of Burnham, and also that an action is now pending in this court, in the name of the said Fabyan, against this defendant, which action was commenced and is prosecuted by this plaintiff to recover, among other things, about $500 for repairs made to the Mount Washington house in 1849, prior to the 4th of September in that year ; and the defendant contends that whatever he is liable for, if anything, on account of said repairs, should be allowed in reduction of such damages, if any, as the plaintiff may be entitled to recover in this action.   To the admission of this evidence the plaintiff objects.   If the court shall

be of opinion that such proof is admissible and material upon either of said points, then this case is to be discharged and the action tried by the jury, unless the court shall decide that the action cannot be maintained.

The defendant was requested to pay said sum of $1,000, and interest thereon from September 1, 1849, before this suit was commenced. This request was at Gilford, in this county, from one to two hours before the commencement of this suit. The defendant then resided and still resides in Baldwin, Maine.

The defendant contends that this action cannot be maintained upon the facts stated, and also that the evidence of a fraudulent conveyance and in relation to said repairs is admissible.

*E. A. Hibbard,* (with whom was *H. A. Bellows,*) took the following positions for the defendant:

I. The action cannot be maintained.

1. It clearly cannot be sustained by virtue of any statute. No matter whether the defendant occupied the premises himself, or rented them and received the rents. No remedy is provided by statute. Injustice may occasionally be the result, but that is a point for the legislature to consider. In many States the course to be pursued in such cases is particularly prescribed by law. See Maine R. S., 1840, ch. 94, secs. 25–27 ; Mass. R. S., 1836, ch. 73, sec. 24. Whether similar provisions have been omitted in this State by oversight or by design, it is unnecessary to determine.

2. It seems almost equally clear that no action lies at common law. It has been decided in this State that "a mortgager cannot sustain assumpsit against his mortgagee for the profits of the land received by the latter between the time of entry to foreclose and the time when the mortgaged premises were redeemed." *Robinson* v. *Robinson,* 1 N. H. 161. The same principles appear to be applicable to and decisive of the present case.

In that case the only point decided was that a suit could not be maintained, and the mortgager had no remedy *after* performance of the condition of the mortgage. Whether, in the

absence of any statute, there was any remedy by which the mortgager could compel the mortgagee to account for the rents and profits, if he availed himself of it *at the time of* performance, the court declined to decide.

According to the provisions of the law now in force, the rents and profits received are to be deducted from the sum which would otherwise be due upon the mortgage, and upon the balance being lodged with the clerk the court will decree that the mortgage be discharged. R. S., ch. 131, secs. 8, 9 and 10.

But even as the law now stands there is no remedy any more than there was before, in case the amount secured by the mortgage has been paid.

In the case at bar, it is unnecessary to determine whether, where a creditor has taken possession under an extent, he can in any way be compelled to account for the rents and profits *at the time of* redemption. It is sufficient to say that no action lies to recover them *after* redemption. Whether if a mortgager, after an entry by the mortgagee for the purpose of foreclosure, tenders to him the sum due, deducting the net income, this would be sufficient, was left undecided in *Robinson* v. *Robinson*, before cited, and whether such a tender, in case of an extent, would be sufficient, need not now be decided.

If the debtor, or those claiming under him, make a tender, it must be taken as an admission that the amount tendered is the amount to which the creditor is entitled. The debtor is bound by his tender, and if he dares not risk a tender of the balance due, after deducting the rents and profits, it is a waiver of his claim.

The purchaser of a right to redeem mortgaged real estate is made liable by statute to the debtor, after redemption, for the rents and profits received therefrom over the expenditures made thereon. R. S., ch. 196, sec. 10. It would seem that the legislature did not consider that there was any common law right.

Where a co-tenant of real estate holds the exclusive possession and income thereof, against the will and without the consent of his co-tenant, the co-tenant so excluded may maintain assumpsit to recover his damages. R. S., ch. 180, sec. 6. But there is

no pretence that assumpsit would lie in such a case, in the absence of the statute.

It is believed that in all the cases analogous to the present action, in which assumpsit has been maintained, it has been by virtue of statutory provisions, and not by virtue of any common law remedy.

The precise point which arises in this case appears to have been decided in Tennessee. *Kannon* v. *Pillow*, 7 Humph. 281.

Russell should have paid the debt, and collected the rent himself. Here is no more hardship upon him than frequently arises through the neglect of a party.

If a judgment debtor, whose land has been taken by extent, pays part of the debt in order to redeem the land, but fails to pay the residue, he cannot recover back the money thus paid. *Morton* v. *Chandler*, 6 Greenl. 142.

The same rule of law, it is well known, applies where a part of a mortgage debt is paid, and the remainder left outstanding.

Where a note, given as the consideration of a quitclaim deed of land, and where there was no fraud, has been paid by the grantee, the money cannot be recovered back, although such grantee has been evicted by an elder and better title. *Loper* v. *Stevens*, 2 Shep. (14 Maine) 133.

Where money is paid by a town for damages awarded to the owner of land over which a highway has been laid out, and immediately afterwards, before the building of the highway is commenced, it is discontinued, no action lies to recover back the money, and this no doubt would be so without regard to whether the town opposed the original petition or not, or whether the land owner was for or against the original petition when the highway was laid out, or for or against a discontinuance when it was discontinued. See *Hampton* v. *Coffin*, 4 N. H. 517.

If any distinction can be drawn between the principle which governs that case and the present one, it certainly will not be because there is any more equity in this case than in that.

It will be more convenient to consider in the first place whether an action could have been sustained in case the defendant had

occupied the premises himself, and had received no money for rents.    It is difficult to see what form of action could be supported in such a case.    Assumpsit for use and occupation would not lie. *Alton* v. *Pickering*, 9 N. H. 496.

And if assumpsit would not lie under such a state of facts, on what principle can a count for money had and received be held sufficient in this suit?    Can the slight circumstance that the defendant rented the premises to another, and received the rent in money, make him any more liable than if he had occupied them himself, or had rented them and taken his pay in other property?

It is said that assumpsit for money had and received will not lie in any case where no other action could be sustained.    If so, the question arises, what other form of action could be sustained in the present instance?

The defendant in fact contends that he cannot be held in an action for money had and received, whatever may be the law as to the liability of a creditor in such a case to account for the rents and profits.

Money had and received is an inappropriate remedy.    Suppose the defendant had made repairs, (and it appears he is sued for repairs made by his tenant,) of course he should only account for the net profits after deducting the amount necessarily expended.    And how is he to avail himself of this?    Is it to be filed in set-off, or allowed in some other way, or not allowed at all?

The plaintiff seeks to raise an implied promise to pay this money to him.    But it appears that the defendant sold Burnham's right to redeem on an execution issued on a judgment in which the attachment was subsequent to the deed to Russell.    Thus the court can see that Dyer intended to dispute the validity of that deed, and hold the premises, and did not intend to account for the rents in case the amount due on his first judgment was paid.    How can the law imply a promise when it is evident the defendant designed to keep the money?

3. The demand was insufficient.    Sufficient time was not allowed the defendant to procure the money, he being at a distance from

home. Also, too much was demanded, as interest was not allowable till after a demand, and here interest for over six years was demanded; and beside, the whole rent was demanded, though a part of it accrued upon that portion of the premises set off on the second execution. It does not appear that the defendant refused to pay. He could not probably have procured the money in season to make a tender to the plaintiff before the writ was served. It probably will not be denied that a demand was necessary, and if so, it seems it should have been specially averred in the declaration. 1 Chit. Plead. 330, 331, and notes.

II. If the title of the plaintiff, acquired by his deed from Burnham, was fraudulent and void as to Dyer, he being a creditor, then Dyer's possession was rightful in every respect, and he could not be compelled to account for the rents and profits to the plaintiff. The plaintiff, in fact, is liable to him for what *he* has received.

The case of *Russell* v. *Fabyan*, 7 Foster 529, implies that, as between Russell and Dyer, this would be a good answer, though Fabyan was not in a situation to avail himself of it. And it seems to be put upon the ground that he had not been evicted under the title derived from the sale of the equity, and therefore could not dispute his landlord's title. See pages 538, 539, 540.

There can be no dispute that Burnham's right to redeem against the extent could have been sold on the second execution, if he had not previously conveyed to Russell; Rev. Stat., chap. 196, sec. 12 ; and if the deed from Burnham to Russell was fraudulent as to Dyer, of course it could not interfere with his sale of the equity afterwards. The argument that Burnham had nothing in the premises to sell " is certainly ingenious, but it cannot prevail." See *Kingsbury* v. *Wild*, 3 N. H. 32.

And in this case, part of the land demised was set off on the second execution, and no redemption of that was attempted.

*S. C. Lyford*, for the plaintiff, maintained :

1. Assumpsit for money had and received will lie whenever

the defendant has in his hands money which the plaintiff ought to have. *Martin* v. *Farnum*, 4 Foster 191.

" It is a liberal equitable form of action, and courts have been disposed to uphold it when no rule of policy or strict law interferes to prevent." Whenever a court of equity would compel payment, this action lies. *Wright* v. *Butler*, 6 Wend. 284 ; *Stratton* v. *Rastall*, 2 T. R. 370 ; *Pierce* v. *Duncan*, 2 Foster 18.

2. Money paid upon a judgment which is afterwards set aside may be recovered back in an action for money had and received. *McDonald* v. *Napier*, 14 Geo. 89 ; 14 U. S. Dig. 58.

So, when a judgment is reversed upon error, the money paid upon it may be recovered back in an action for money had and received. On the same principle we contend that when the amount of the judgment, costs and interest was tendered to Dyer, the judgment was annulled, and the money received of Fabyan became the money of the plaintiff, and he became entitled to recover it as money held for his use.

The law creates a privity whenever the defendant has in his hands money which belongs to the plaintiff.

3. Daniel Burnham having conveyed the premises set off to Dyer on the 21st of August, 1844, in fee to the plaintiff, he had no longer any interest in the land, or any right to redeem. Dyer could only sell Burnham's right to redeem, and if Burnham had no right to redeem himself, there was none to sell. As far as this action is commenced, it could make no difference whether a valid consideration was paid by Russell or not. Burnham conveyed all his interest ; and as to time, the right to redeem was gone, as well by deed of gift as by deed of good consideration.

This question the plaintiff holds has already been settled in *Russell* v. *Fabyan*, 7 Foster 529. In that case Fabyan could take the same advantage that can be taken by the plaintiff. If the sale of the equity gave Dyer a title, no action could have been sustained against Fabyan for rent.

4. The plaintiff is entitled to interest from the time of the receipt of the money received of Fabyan.

*Hibbard*, in reply.

1. The positions and the authorities cited in relation to the maintenance of the action, seem to have little bearing on this case. The reversal of a judgment on error bears the closest analogy, but in reality there is no analogy between that and the present state of facts. Nothing is better established than the power of the court to restore the plaintiff in error to all which he has lost by the erroneous judgment. See *Little* v. *Bunce*, 7 N. H. 491. The right of the party to restitution being admitted, it has been held that assumpsit for money had and received is a proper form of action to recover it. But here the right of the party to the money is the principal point in controversy, although the defendant contends that in any event assumpsit for money had and received cannot be sustained.

2. The decision in *Russell* v. *Fabyan*, 7 Foster 529, does not support the second position of the plaintiff.

3. Interest is only allowable from the time of the demand.

FOWLER, J. The defendant offered to prove that the conveyance from Daniel Burnham to the plaintiff was fraudulent and void as to creditors. The case finds the defendant to have been a creditor of Burnham. If the conveyance to the plaintiff was void as to the defendant, as it is to be taken to be for the purposes of this case, then by the levy of the defendant's two executions on the 12th day of June, 1848, the premises, the rent of which from March 20, 1849, to March 20, 1850, is in controversy in this suit, became the absolute property of the defendant, subject to the right of Daniel Burnham to redeem the same. And by the levy of the balance of the second execution on the 20th of June, 1848, perfected by the sale at auction on the 31st of July, 1848, and the deed in accordance therewith, if correctly made and no question is raised upon that point, this equity of redemption from the first levy passed to the defendant, subject to the right of Daniel Burnham to redeem it. Comp. Stat., chap. 195, sec. 7, p. 469 ; Comp. Stat., chap. 209, sec. 12, p. 503. The deed to the plaintiff being void as to the defendant, and his judgment debts levied upon the property conveyed

by it, the plaintiff acquired by that deed no rights in the premises covered by it, except what Daniel Burnham possessed. By the two levies, one upon the land itself and the other upon the equity of redemption from the former levy, all Daniel Burnham's legal rights in the premises were transferred to the defendant, subject to his right to redeem those levies severally, and of course nothing remained to him, or his assignee, the plaintiff, but that right of redeeming from the two levies severally. Comp. Stat., chap. 209, sec. 13, p. 503.

The plaintiff then had the right, as the assignee of Daniel Burnham, to redeem the property first levied upon by the defendant's executions, by paying the amount of its appraised value and the interest thereof, as he attempted to do by his tender on the 3d day of November, 1849 ; but that tender in no way affected the rights of the defendant to the premises by virtue of his second levy, if the conveyance to the plaintiff were fraudulent and void as to him. The evidence, then, proposed by the defendant, to prove that the conveyance of Daniel Burnham to the plaintiff was fraudulent and void, was competent to be received, and might become material to the defendant's rights in this case, were the plaintiff entitled to the rents and profits of the land, unless the defendant should establish the validity of his second levy upon the right of redemption from the first.

But, admitting the validity of the conveyance from Daniel Burnham to the plaintiff, and that the first levy was vacated by the tender, and that the second was void *ab initio*, can the plaintiff maintain the present action for the mean rents and profits ?

The lands of a debtor are holden liable for his debts only by virtue of the provisions of the statute. At common law, there was no mode of taking lands to satisfy debts, and the writ of elegit provided by statute only gave to the creditor the right to hold the lands of his debtor, until, from the rents and profits, the debt, costs and interest were paid. *Gore* v. *Brazier*, 3 Mass. 522, and authorities.

Our present statute provides that all the debtor's interest in the real estate levied upon shall pass by the levy against all

persons whatever, if the levy is recorded on or before the return day of the execution.  Comp.  Stat.  501, chap.  208, sec.  12 ; Rev. Stat., chap. 195, sec. 12.

The act of February 15, 1791, [Laws of 1805, p. 150] provided, that " all executions duly served upon any lands and tenements, being returned into the clerk's office out of which the same issued, and there recorded, shall make a good title to the party for whom they shall be so taken, his heirs and assigns forever."

The act of July 4th, 1829, [Laws of 1830, p. 101] provided, that " all executions duly extended upon any lands, tenements or hereditaments, and recorded in the office of the register of deeds in the county where such lands, tenements or hereditaments may be situate, shall constitute the same title to the party for whom they shall be so taken, as the debtor had therein."

By our statute, then, the creditor by the levy of his execution acquires the same estate which the debtor had in the lands levied upon ; that is, an estate in fee, defeasible on the performance of a condition subsequent.

This condition subsequent is thus set forth in the Revised Statutes, chap. 195, sec. 13 ; Comp. Stat., chap. 208, sec. 13, p. 501.  " Such extent shall be void, if, within one year from the return day of the execution, the debtor, or any person interested, shall pay or tender to the creditor the sum at which such real estate was appraised, with interest from the time such levy was received for record by the register of deeds."   And it is further provided, by section 14 of the same chapter, that " the creditor, upon such payment or tender, having his reasonable charges therefor duly tendered to him, shall execute a release to the debtor of his right in such real estate acquired by such levy."

Substantially the same provisions existed in the act of July 4, 1829, and in that of February 15, 1791.   Laws of 1830, 101, and Laws of 1805, 150.   In the act of 1829 it is said that upon the payment or tender, " the extent shall be void and of no effect," and in that of 1791. that, upon such payment or

tender " every such debtor or debtors, their heirs, executors or administrators, shall reënter into such lands and tenements by due process of law, and be reëstablished in their former estate in such lands and tenements, as if such execution had never been levied upon the same." The act of 1791 contains no provision for the creditor's releasing his interest in the lands levied upon.

Upon all the provisions of the statutes, then, it is clear that the judgment creditor acquires by the levy an absolute estate of inheritance in the land, subject to defeasance. While in possession under the levy, he is seized of a freehold, and his estate is as perfect and complete as if he were the absolute, unqualified owner. Upon the redemption the statute says the levy shall be void, but this evidently only means that it shall be vacated, that its effects shall be avoided thereafter. It does not mean, and cannot mean, that the creditor shall be considered a trespasser from the beginning — but only, that thereafter the levy shall be of no force or validity so far as the lands are concerned. While in possession under the levy, the defendant, in the case before us, had all the title of the true owner in the land; all the title that Daniel Burnham ever possessed. He received the rents and profits to his own sole and exclusive use, as such owner. There was no privity between him and the plaintiff. He entered under no legal liability to account for the rents and profits, in case of the defeat of his title by redemption. The statute is silent on the subject of his accounting for the income of the premises, over and above the expenditures made ; and we know of no principle of law, in the absence of all statutory provisions, whereby the absolute owner of land, who receives the rents and profits thereof while such owner, can be made liable for those rents and profits to one who subsequently acquires his title. Nor can it make any difference that the occupation was by a sub-tenant, who paid over the rent to the defendant. It was wholly immaterial, if the defendant were entitled to the rents and profits, whether he occupied by himself or a tenant.

In *Cummings & Wife* v. *Noyes,* 10 Mass. 434, it was held

Russell *v.* Dyer.

that where judgment was recovered in a writ of entry, and possession was taken under it, that upon the reversal of that judgment by a writ of error, the plaintiff in the former suit was liable for the rents and profits in an action of trespass or assumpsit ; but this was on the ground that he entered upon the premises under a legal liability at common law to account for the rents and profits upon the reversal of the former judgment; on the well settled principle that upon the reversal of a judgment on a writ of error, the plaintiff in error is entitled to restitution, and to be placed in the same situation he would have been had the erroneous judgment never been rendered. In the present case, there exists no such right in the plaintiff, nor any such liability on the part of the defendant.

In *Robinson* v. *Robinson,* 1 N. H. 162, decided in February, 1818, prior to the existence in this State of any statute provision on that subject, it was holden that a mortgagor could not maintain assumpsit against his mortgagee for the rents and profits of the land mortgaged, received by the latter between the time of entry to foreclose and the time when the mortgaged premises were redeemed. This decision seems to have been based on the common law principle that, upon breach of condition, both the property mortgaged and its subsequent income vested absolutely in the mortgagee ; and having received the rents and profits as his own, in the absence of any statute provision compelling him thereto he could not be compelled to refund them. A subsequent statute, still in force, provides that in such case the mortgagor need pay or tender only the excess of the debt and interest above the amount of rents and profits received, in order to redeem.

We are at a loss to perceive on what ground a judgment creditor, who by the express terms of the statute is the absolute owner for the time being of the real estate levied upon, can be liable at common law to account for rents and profits received while occupying the land levied upon, if a mortgagee were not liable to account for those he received while in possession for the purpose of foreclosure. If there be any difference in the two cases, it is clearly in favor of the judgment creditor.

Russell *v.* Dyer.

The statute of *Massachusetts* provides that in case of a levy on real estate, the debtor may redeem within a year by paying the amount of the appraised value and interest, less the amount of the net rents and profits received by the creditor in the mean time.   Mass. Rev. Stat. 467.   So, also, in *Maine.*   In *Vermont*, the creditor does not enter into possession until the expiration of the six months given for redemption, and if there be no redemption, the debtor is made liable to the creditor for the rents and profits of the six months.   Vt. Rev. Stat. 241, 242.

In *Tennessee*, where land is sold upon execution, with a right to the debtor to redeem at any time within two years by payment of the purchase money and ten per cent. interest, instead of being appraised and set off to the creditor, it was held by the Supreme Court of that State in *Kannon* v. *Pillow*, 7 Humphrey 281, that no action could be maintained by the debtor against the purchaser for rent received by him of a sub-tenant during his occupation prior to the redemption.

The facts in that case were, that Kannon's land was sold on execution to Pillow, who immediately took possession, having received a deed from the sheriff.   At the time of the sale, one Perry was tenant under Kannon, and afterwards attorned to Pillow.   The sale took place December 24, 1842, and the land was redeemed August 20, 1844.   Pillow received of Perry the rent of $130 for each of the years 1843 and 1844, before the commencement of the action.   The writ contained three counts. The first, a special count, setting forth the facts ; the second, a common count, for use and occupation, and the third, a count for money had and received.   There was another special action on the case between the same parties, considered at the same time, brought to recover damages for waste alleged to have been committed by the defendant during his occupation under the execution sale.   Part of the crops of 1844, at the time of the redemption in August, were ungathered, and the sub-tenant of Pillow retained the occupation of the whole land until the close of the year.

The court held that Kannon could maintain no action for the

rents and profits prior to the redemption, or for waste committed during the period of the occupation under the execution sale; but that he was entitled to recover rent for so much of the land as was not covered by the growing and ungathered crops, from the time of redemption until possession was given him.

In delivering their opinion the court say: " The purchaser becomes the absolute owner of the land, and receiving a deed and entering into possession, is entitled to the rents and profits; and the former owner has nothing but the naked right of redemption, which is irretrievably lost if it be not asserted in the time and manner prescribed by law." * * * * * * *

" The case is better assimilated to a sale of land with the liberty of re-purchase; in which case the vendee, if he go into possession, cannot be liable for rents and profits, because the land is absolutely his, until the condition be performed by which it reverts to the former owner."

The plaintiff's argument, and his citation of authorities to show that where one has in his possession money belonging to another, an action for money had and received will lie to recover it, have no application to the present case. They are based on the assumption, for which there is no warrant, that the rents and profits of the property in controversy belonged to the plaintiff, and were received by the defendant to his use. They beg the very question in dispute between these parties. If the $1000 received by the defendant from Fabyan had belonged to the plaintiff, it might undoubtedly have been recovered in the present form of action. But the plaintiff entirely fails to show any legal claim to the money.

If our statute, like that of Massachusetts in such cases, or like our own in the case of a purchaser of the equity of redemption of lands mortgaged, had provided that, upon the redemption by the debtor, the judgment creditor should account for rents and profits received over and above expenditures incurred and improvements made, the right of the plaintiff to recover might have been clear and unequivocal. But no such provision exists. For reasons deemed sufficient, the legislature have omitted any

regulation or provision on this subject, while they have provided for the levy upon an equity of redemption. Until they shall see fit to enact some law on this subject, the debtor has no claim for rents and profits received by his judgment creditor, after levy upon real estate and before redemption.

The conclusion to which we have arrived renders any decision of the question raised in relation to repairs unnecessary. It would, however, seem, from the terms of the lease between the plaintiff and Fabyan, under which Fabyan paid the rent for 1849 to the defendant, that Fabyan could have no just claim to recover for repairs, as he expressly covenanted to keep the premises in repair. But it is not necessary to decide this point, as it does not now arise.

As we are of opinion that this action cannot be maintained, whether the conveyance to the plaintiff were or were not fraudulent, there must be

*Judgment for the defendant.*